**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **MUHAMMAD TAYYAB SHAHEEN, et al.,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**MARCO A. RUBIO,**<br>*in his official capacity as U.S. Secretary of State*, **et al.,**<br><br>**Defendants.** | **Case No. 25-cv-01186 (APM)** |

**MEMORANDUM OPINION**

**I.**

On October 30, 2025, this court denied Defendants' motion to dismiss Plaintiffs' petition seeking to compel action on Plaintiff Uzair Abbas's visa application, which was temporarily "refused" on or around February 29, 2024, and has remained in administrative processing ever since.[1] *See* Mem. Op. & Order, ECF No. 9, at 1, 3. Defendants at that time argued only that (1) the D.C. Circuit's opinion in *Karimova v. Abate*, No. 23-cv-5178, (D.C. Cir. July 24, 2024) (per curiam), incontrovertibly held that a consular officer has no duty to act on a visa application held in administrative processing and (2) Plaintiffs' claims were barred by the doctrine of consular nonreviewability. *See id.* at 2. This court disagreed. It ruled that *Karimova* held only that section 555(b) of the Administrative Procedure Act (APA) did not place a "clear, non-discretionary duty"

[1] The two other Plaintiffs are Muhammed Tayyab Shaheen and Shazia Waseem. Plaintiff Shaheen is a U.S. citizen and, in 2006, filed an I-130 petition on behalf of his sister, Plaintiff Waseem. Compl., ECF No. 1, ¶¶ 23, 25, 60. Plaintiff Abbas is one of Waseem's children and a derivative applicant for the immigrant visa. *Id.* ¶ 24. Following an interview with a consular officer on February 29, 2024, Waseem and all her children but Abbas received visas. *Id.* ¶¶ 66–69; Answer, ECF No. 11, ¶¶ 66–69. Abbas's application remains in administrative processing. Compl. ¶¶ 69–74. For ease of reference, the court refers to the Abbas's outstanding derivative status simply as "Abbas's visa application."

on a consular officer to "re-adjudicate [an] already-refused application," without holding the same for any other source of law. *Id.* at 2–3 (alteration in original) (quoting *Karimova*, 2024 WL 3517852, at *3). The court also observed that courts in this District have "repeatedly" held that consular nonreviewability does not shield from review an agency's inaction on a visa application. *See id.* at 3.

Defendants now move for judgment on the pleadings on the sole basis that there has been no unreasonable agency delay in adjudicating Plaintiff Abbas's visa application under the factors set forth in *Telecommunications Research & Action Center v. FCC* (*TRAC*), 750 F.2d 70, 80 (D.C. Cir. 1984), commonly called the "*TRAC* factors." *See* Defs.' Mot. for J. on the Pleadings, ECF No. 14 [hereinafter Defs.' Mot.], at 6–16. In response, Plaintiffs argue that an unreasonable-delay determination is inappropriate without the benefit of an administrative record and, in any event, the *TRAC* factors support a finding of unreasonable delay. *See* Pls.' Resp. in Opp'n to Defs.' Mot., ECF No. 17 [hereinafter Pls.' Opp'n], at 5–19. For the reasons that follow, Defendants' Motion for Judgment on the Pleadings is granted.

**II.**

Federal Rule of Civil Procedure 12(c) permits any party to move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." The court applies the same standard governing a Rule 12(b)(6) motion when evaluating a Rule 12(c) motion. *ACF Renewable Energy Ltd. v. Republic of Bulgaria*, 804 F. Supp. 3d 141, 148 (D.D.C. 2025). To survive a Rule 12(b)(6) motion, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Id.* The court must "construe the complaint in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged." *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (internal quotation marks and citation omitted).

**III.**

To state a claim for unreasonable delay under the APA, *see* 5 U.S.C. § 706(1), a plaintiff must plausibly allege that (1) "the agency failed to take a discrete agency action that it is required to take" and (2) "the delay was unreasonable." *Da Costa v. Immigr. Inv. Program Off.*, 80 F.4th 330, 340 (D.C. Cir. 2023) (internal quotation marks and citation omitted). Defendants address only the latter requirement. *See* Defs.' Mot. at 6–16. The court therefore will assume the first criteria is satisfied and focus solely on the second. When determining whether a delay in agency action is unreasonable, the court is guided by the familiar six *TRAC* factors:

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold the agency action is unreasonably delayed.

*TRAC*, 750 F.2d at 80 (internal quotation marks and citations omitted).

To begin, Plaintiffs' threshold argument that the court should not consider the unreasonable delay factors because the case is at a motion for judgment on the pleadings is unavailing. *See* Pls.' Opp'n at 5–10. A plaintiff must plausibly "allege that . . . the delay was unreasonable" at the pleadings stage. *See Da Costa*, 80 F.4th at 340. While the unreasonable delay analysis under

*TRAC* is indeed a fact-intensive inquiry, *see Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003), a plaintiff does not "automatically survive[] a motion to dismiss by merely alleging that a processing delay is unreasonable" and remains "subject to the standard for pleadings under *Twombly* and *Iqbal*," *Ahmed v. U.S. Dep't of Homeland Sec.*, No. 21-cv-893 (APM), 2022 WL 424967, at *5 (D.D.C. Feb. 11, 2022). The contrary, out-of-circuit decisions that Plaintiffs offer are outweighed by "the majority of authority in this jurisdiction demonstrat[ing] that it is appropriate to apply the *TRAC* factors at the motion to dismiss stage." *Vafaei v. U.S. Citizenship & Immigr. Servs.*, No. 22-cv-1608 (CKK), 2024 WL 1213394, at *3 (D.D.C. Mar. 21, 2024) (collecting cases).[2] Indeed, the D.C. Circuit in *Da Costa* affirmed that approach by affirming dismissals of two visa-adjudication, unreasonable delay actions for failure to state a claim. *See Da Costa*, 80 F.4th at 338–340. The court therefore may consider the *TRAC* factors without reliance on an administrative record.

*First and second factors.* The first two factors, "relating to whether Congress has imposed a timeline for the agency action," are often considered together and, here, favor Defendants. *See Bagherian v. Pompeo*, 442 F. Supp. 3d 87, 95 (D.D.C. 2020). "There is no congressionally imposed timeline here," and courts in this District have repeatedly affirmed that "Congress has given the agencies wide discretion in the area of immigration processing." *Id.* (quoting *Skalka v. Kelly*, 246 F. Supp. 3d 147, 153–54 (D.D.C. 2017)).

Resisting this outcome, Plaintiffs cite 8 U.S.C. § 1571(b), which expresses "the sense of Congress that the processing of an immigration benefit application should be completed not later

[2] Plaintiffs further highlight the D.C. Circuit's observation that *TRAC* was "brought under a claim for writ of mandamus, not APA relief." Pls.' Opp'n at 6 (citing *Afghan & Iraqi Allies v. Blinken*, 103 F.4th 807, 815 (D.C. Cir. 2024)). But, in that very paragraph, the D.C. Circuit continued that it has "routinely applied the same [*TRAC*] framework to assess claims that agency action has been 'unreasonably delayed' for purposes of the Administrative Procedure Act, 5 U.S.C. § 706(1)." *Afghan & Iraqi Allies*, 103 F.4th at 815.

than 180 days after the initial filing." Pls.' Opp'n at 13. But the D.C. Circuit has described § 1571(b) as an "aspirational statement" and thus "insufficient to set a deadline." *Da Costa*, 80 F.4th at 344. Section 1571(b) provides a "ruler against which the agency's progress must be measured," but it does not tip factors one and two in Plaintiffs' favor. *See id.* (cleaned up). Plaintiffs also cite 9 FAM § 504.7-2(b), which advises consular departments to "strive" towards a "30/60-day" visa processing time. Pls.' Opp'n at 14. That is likewise an aspirational statement that does not set concrete parameters for visa adjudication.

Plaintiffs further point to 22 C.F.R. § 42.81(e), which states that "[i]f a visa is refused, and the applicant within one year from the date of refusal adduces further evidence tending to overcome the ground of ineligibility on which the refusal was based, the case shall be reconsidered." They argue that the regulation "presupposes a duty to first adjudicate the visa application within one year, and if the visa was refused, a duty to reconsider the application within twelve months if further evidence is submitted." Pls.' Opp'n at 14. But the plain text of that regulation establishes a one-year window for the *applicant* to cure any defects and secure reconsideration. It does not require the consular officer to reconsider the application within any defined period once such information is submitted.

Finally, Plaintiffs—relying on a 2024 declaration by Carson Wu, then the Acting Director of the Office of Screening, Analysis, and Coordination in the Bureau of Consular Affairs' Visa Services Office—contend that, because processing an application refused under Section 221(g) involves a request for a security advisory opinion ("SAO") that is not "addressed or resolved in a first-in-first-out or last-in-first-out basis," the visa adjudication process "does not follow a rule of reason." *Id.* at 12 (citing Compl., ECF No. 1 [hereinafter Compl.], Ex. A, ECF No. 1-3 [hereinafter Wu Decl.]). The Wu Declaration explains the "prescribed steps" consular officers must take when

evaluating refused or flagged visa applications and the factors that affect completion of SAO requests, such as "the extent of review and coordination required, the amount of derogatory information, which other agencies have responsive information, the timing of when each partner agency completes its review" and other "emergent circumstances." *See* Wu Decl. ¶¶ 15, 27.

Plaintiffs do not, however, explain how this processing approach is unreasonable, even if it does not proceed on a "first-in-first-out" basis. Indeed, whether agency review rigidly proceeds on a "first-in-first-out" basis is not dispositive for whether the adjudication follows a rule of reason. *See, e.g.*, *Da Costa*, 80 F.4th at 337. As another court in this District observed about the Wu Declaration, it makes clear "that Defendants have a plan in place to adjudicate SAO requests, that the process, albeit complicated, operates based on a rule of reason, and that establishing a required timeframe for the adjudication of an individual request is necessarily difficult—all of which weigh in favor of Defendants under the first *TRAC* factor." *Shoaie v. Blinken*, No. 24-cv-1513 (GMH), 2024 WL 4697732, at *10 (D.D.C. Nov. 6, 2024); *see also Mosayebian v. Blinken*, No. 24-cv-130 (JLS), 2024 WL 3558378, at *9 (S.D. Cal. July 25, 2024).[3] This court agrees.

"Absent a congressionally supplied yardstick, courts typically turn to case law as a guide." *Sarlak v. Pompeo*, No. 20-cv-35 (BAH), 2020 WL 3082018, at *6 (D.D.C. June 10, 2020). District "courts have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable." *Id.* (internal quotation marks omitted). Here, approximately 29 months have passed between February 2024, when Plaintiff Abbas's application was "refused," and the date of this opinion.[4] That delay is

[3] Plaintiffs gesture to an additional declaration from Defendant Robert Jachim, but the content of that declaration is nearly identical to the Wu Declaration and, therefore, likewise does not support their argument. *See* Pls.' Opp'n at 13; Pls.' Resp. in Opp'n to Mot. to Dismiss, ECF No. 6, Ex. A, ECF No. 6-2.

[4] Plaintiffs also aver that the "delay is especially unreasonable because the consular officer told Plaintiff Abbas the visa was approved" and it "wasn't until Plaintiff Abbas later inquired at the Embassy on his own that he was told about the administrative processing." Pls.' Opp'n at 12–13. But Plaintiffs cite no case law for the proposition that learning an application has been placed in administrative processing later in time has any bearing on unreasonable delay.

within the range of reasonableness. *See, e.g.*, *Da Costa*, 80 F.4th at 344 (finding that the multi-year passage of time in that case "has not reached the level of disproportionality [the Circuit has] previously held sufficient to grant relief"). The first two factors thus weigh in favor of Defendants.

*Fourth factor*. The fourth *TRAC* factor—the effect of competing agency priorities—carries substantial weight in many cases. *See Milligan v. Pompeo*, 502 F. Supp. 3d 302, 319 (D.D.C. 2020). In *Da Costa*, the D.C. Circuit concluded that this factor "strongly disfavor[ed]" the plaintiffs because moving their "petitions to the front of the line would disrupt competing agency priorities with no overall improvement in the [agency's] backlog." 80 F.4th at 343. So too here. Fulfilling Plaintiffs' request simply would move Plaintiff Abbas "ahead of longer-pending petitions." *Id.* No matter where he lies in the queue, the relief Plaintiffs seek would "inevitably entail a 'judicial reordering' of the Department's priorities." *Khazaei v. Blinken*, No. 23-cv-1419 (JEB), 2023 WL 6065095, at *7 (D.D.C. Sept. 18, 2023).

In response, Plaintiffs argue that Defendants have provided no evidence of a "queue" of applications that would require Defendants to "reorder" applicants if required to resolve Plaintiff Abbas's pending visa application. Pls.' Opp'n at 15. And if there were a queue, they contend, Plaintiff Abbas should "be at the front" given the length of processing. *Id.* In support, Plaintiffs point to the decisions of courts outside this jurisdiction. *Id.* at 15–18. But Plaintiffs' arguments have repeatedly been rejected by courts in *this* District. *See Shoaie*, 2024 WL 4697732, at *12–13 (collecting cases and observing that other judges in this District have determined that the fourth factor "weighs in favor of the government in cases involving Section 221(g) refusals . . . even when no formal queue has been established by the defendant"). Even if processing does not proceed linearly, Plaintiffs' requested relief would nonetheless require diverting resources from other applications, and the court cannot override the agency's "unique—and authoritative—

position to view its projects as a whole, estimate the prospects for each, and allocate its resources in the optimal way." *In re Barr Lab'ys, Inc.*, 930 F. 2d 72, 76 (D.C. Cir. 1991). Additionally, Plaintiffs offer no evidence establishing where Plaintiff Abbas "stands in the processing queue," so their contention that he should be at the front is "entirely speculative." *Tekle v. Blinken*, No. 21-cv-1655 (APM), 2022 WL 1288437, at *4 (D.D.C. Apr. 29, 2022). The fourth factor thus "weighs against judicial intervention to expedite adjudication." *Da Costa*, 80 F.4th at 344.

*Third and fifth factors*. The overlapping third and fifth *TRAC* factors consider whether "human health and welfare are at stake" and the "nature and extent of the interests prejudiced by delay." *TRAC*, 750 F.2d at 80. Plaintiffs claim harms of many kinds, including "family separation, travel costs, financial strain, medical issues, anxiety and depression, and other hardships." Compl. ¶ 78.[5] Plaintiff Abbas's parents describe the hardship they continue to endure from the separation and the absence of their son's emotional and financial support as they age. *See* Compl., Ex. F, ECF No. 1-8, at 1–2. This court does not take lightly familial separation caused by government inaction and inefficiency. It "reminds the government that it must treat [Plaintiffs'] case with 'the sense of urgency one would expect when familial interests are at stake.'" *Bagherian*, 442 F. Supp. 3d at 95 (quoting *Skalka*, 246 F. Supp. 3d at 154). On balance, these factors tip slightly in Plaintiffs' favor. *Cf. Da Costa*, 80 F.4th at 345 (finding that factors three and five did not favor the plaintiffs where one group alleged financial harms and the other, although asserting harms to health and welfare, failed to link those harms to the delayed adjudication).

[5] Plaintiffs also note their "unique circumstances given the harsh geopolitical realities and uprising in Iran that threaten Plaintiff Abbas'[s] safety given his desire to emigrate" and fear of Presidential Proclamation 10998, which suspends entry for foreign nationals from certain countries, including Iran. Pls.' Opp'n at 4, 15. Abbas, however, appears to be from Pakistan and currently resides in Germany. Compl. at 1 (case caption). Plaintiffs have not explained how the situation in Iran is relevant to his circumstances, nor have they explained how "harsh geopolitical realities between the U.S. and Pakistan" bear on his wellbeing aside from a speculative concern that the entry of Pakistani nationals could be suspended. *See id.* ¶¶ 119–120.

*Sixth factor*. Finally, the sixth factor reminds the court that it "need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed." *TRAC*, 750 F.2d at 80 (internal quotation marks omitted). Here, Plaintiffs allege no facts suggesting that the agency acted improperly, aside from the delay itself, so this factor is neutral. Pls.' Opp'n at 18–19; *see Khan v. Bitter*, No. 23-cv-1576 (BAH), 2024 WL 756643, at *6 (D.D.C. Feb. 23, 2024) (explaining that "delay alone does not demonstrate any agency misconduct").

* * *

After weighing all the *TRAC* factors, the court finds that Plaintiffs have failed to state a claim for unreasonable delay under the APA. The court sympathizes with the hardship caused by the length of time without final adjudication and the ensuing uncertainty, but this hardship is outweighed by the rule of reason supplied by caselaw and the fact that granting relief would be at the expense of others. The mandamus claim also is dismissed because the APA provides an adequate remedy at law. *See Fornaro v. James*, 416 F.3d 63, 69 (D.C. Cir. 2005).

**IV.**

For the foregoing reasons, Defendants' Motion for Judgment on the Pleadings, ECF No. 14, is granted. A final, appealable order accompanies this Memorandum Opinion.

Dated: August 17, 2026

Amit P. Mehta
United States District Judge